**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

LARRY K. VANWINKLE and
TRESA A. VANWINKLE,

      Plaintiffs,

vs.                                                               Civ.No. 98-0052 WWD/DJS ACE

TIM CAPPELLI and SHERRY CAPPELLI,
COLBYCO INDUSTRIES, L.L.C., a Texas
limited liability company, ATLANTIS
ENTERPRISES, INC., a Texas corporation and
ICHAUWAY MILLS, INC., a Texas corporation,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court upon a Motion for Summary Judgment on Computation of Damages by Defendant Ichauway Mills, Inc. ("Ichauway Mills"), filed February 8, 2001 **(Doc. 161)**. Defendant Tim Cappelli and Cappelli Industries has filed a joinder to this motion (Doc. 182).[1] Having considered the briefs and other materials submitted by the parties, and the applicable law, I find that Defendants' motion is well-taken and will be granted.

**BACKGROUND**

In August, 1993, Plaintiffs Larry and Tresa VanWinkle ("Plaintiffs" or "VanWinkles") invented for sale a flexible therapeutic pillow. The "Thera-Pillow" is a flexible pillow that has a bag-like cover filled with natural granular material like barley that can be heated in a microwave or cooled in a refrigerator and can be applied to a body part to relieve physical discomfort. The

---

[1] Parties have requested oral argument, which I find would be neither necessary nor helpful in making a ruling on the motion.

VanWinkles were issued two patents for their invention, in December 1994 and December 1996, respectively, for Patent Number 5,375,278 ("'278"), a precursor pillow which is not at issue in this summary judgment motion, and Patent Number 5,584,086 ("'086).

During the litigation of this case, Defendant Cappelli filed, and was granted, a Request for Reexamination of claim 1 of '086 (the sole claim in that patent) with the United States Patent and Trademark Office ("Patent Office").  *Defts' Ex. 2*.[2]  The parties jointly filed a request for a stay of this case pending reexamination, which this Court granted in April 1999.  (Doc. 150, 151). After two rejections, the VanWinkles amended claim 1 and the Patent Office subsequently issued a Reexamination Certificate on November 28, 2000.  The Court lifted the stay on January 26, 2001 (Doc. 157).

In the present motion, Defendants seek summary judgment limiting damages Plaintiffs would be entitled to receive if they can prove infringement to a recovery of damages only for sales of products which are proven to infringe the '086 Patent from the date of issuance of the Reexamined Certificate – November 28, 2000.  Defendants contend that because Plaintiffs added limiting language amending their patent claim in order to overcome rejection of the original claim by the Patent Office, they effected a substantive change in the claim and are therefore not entitled to enforce their patent rights before that date.  Plaintiffs' position is that the amended claim only states expressly what was implicit and inherent in the original claim and that they are entitled to damages for the sale of infringing products from the date the patent was initially issued for Patent '086.

---

[2] Both Plaintiffs and Defendants have marked their exhibits numerically.  The Court's citations to exhibits will necessarily denote "Pltffs" or "Defts" with each citation.

*Legal Standard*

A critical factor in a motion for summary judgment in a patent case, as in any other, is the determination by the court that there is no genuine issue of material fact.  *United States v. Diebold*, 369 U.S. 654, 655 (1962), *cited in Barmag Barmer Maschinenfabrik Ag. v.Murata Machinery, Ltd.*, 731 F.2d 831, 835 (Fed.Cir. 1984); *Black, Sivalls & Bryson, Inc.*, 445 F.2d 922, 926 (10th Cir. 1971) (where there are no triable issues of fact and result is clearly a matter of law, patent infringement case is susceptible to summary judgment . . . .).

*Factual History*

The Court adopts Defendants' version of the material facts, which are based largely on documents from the reexamination history.   Plaintiffs apparently concede this version since they offer no dispute of fact in their response brief.   A brief synopsis of these facts, set forth in Defendants' brief at pages three to seven, follows.   In the request for reexamination, Defendant Cappelli called into question the validity of the '086 Patent, contending that every limitation set forth in the original claim 1 was met by two prior art devices not considered by the Patent Office at the time the VanWinkles were issued their '086 Patent, viz., the Hathaway and Gaudreault patents.   The VanWinkles filed a Patent Owners' Statement, contending that the Hathaway Patent was cumulative art in light of the previous Swearingen and Poux patents, and therefore did

not pose a substantial new question of patentability under 35 U.S.C. § 103(a).[3] The Patent Office agreed with Capelli and granted the request for reexamination.

On reexamination, the Patent Office rejected claim 1 of the '086 Patent under 35 U.S.C. § 103(a) as being "unpatentable over Hathaway in view of Gaudreault et al." The VanWinkles responded to the Patent Examiner's action by arguing that the rejection was improper, but did not amend claim 1 of the '086 Patent at this time. The Patent Office noted that Plaintiffs' narrow interpretation of the Hathaway patent was based on an interpretation of terms specified in detail in the written description (or specification) but not the claim itself. Giving the claim in the Hathaway patent its "broadest reasonable interpretation," the Examiner determined that the VanWinkles' design would have been "obvious to one of ordinary skill in the art," rendering the Thera-Pillow unpatentable. Despite Plaintiffs' objections to this rejection, the Patent Examiner issued a second and final rejection, again basing the rejection on the prior devices of Hathaway and Gaudreault.

In response to this final action, the VanWinkles amended claim 1 of the '086 Patent (set forth below) by adding certain language, set apart in bold italic:

1. A therapeutic pillow comprising:

A substantially tubular shaped bag-like covering comprising ears for grasping said therapeutic pillow *wherein said ears for grasping comprise a first ear affixed to first end and a second ear affixed to a second end of said substantially tubular shaped bag-like covering*:

---

[3] The Hathaway device is a tubular-shaped pillow with end loops or "ears" into which the user could place a heated gel-filled insert. The insert used in Hathaway is a gel hot/cold pack. The Gaudreault et al. ("Gaudreault") pillow substituted natural materials such as barley or rice having a given range of water content instead of a gel-based thermal pack. Diagrams of prior art devices, including Swearingen, Poux, Hathaway and Gaudreault, can be found in Patent Owners' Statement under Defendants' Ex. 3.

> Said substantially tubular bag-like covering *comprising a closed bag-like covering,* containing a filling comprising natural materials, *said filling directly contacting and partially filling said bag-like covering;* and
>
> Said natural materials comprising a water content having a range of 5% to 25% by weight.[4]

The inquiry thus comes down to a question of law regarding interpretation of the original and reexamined Claim 1 of Patent '086: whether Plaintiffs' amendment substantively changed the original claim 1 of the '086 Patent such as to relieve Defendants of liability before the date the Patent Office issued the Reexamination Certificate on November 28, 2000.

## DISCUSSION

Defendants' position is premised on a theory of claim continuity, or, in this case, a lack thereof. Under 35 U.S.C. § 307, a reexamined patent will have the same effect on those who infringed before the Reexamination Certificate was issued as the Act specifies for "reissued" patents. However, claim continuity is limited to claims in the reissued patent that are identical to claims in the original patent. *See Seattle Box Co. v. Industrial Crating & Packing*, 731 F.2d 818, 827-28 (Fed.Cir.1984) (the "original claims are dead" and do not survive unless claims of original patent are identical to reissued claims); 35 U.S.C. § 252 (reissue of a patent does not affect preexisting infringement claims "to the extent that [the reissued] claims are identical with the original patent"). Section 252 is of critical importance to the present motion because it also has the effect of limiting an infringer's liability to where it commences only from the date the reissue patent is issued.

---

[4] A diagram of the '086 Patent, along with its specifications, can be found in Plaintiffs' Ex. 2.

5

Claims are considered to be "identical" to their original counterparts if they are "without substantive change." *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346 (Fed.Cir. 1998) (citing *Seattle Box Co*. at 827).  In looking to see whether substantive changes have been made, a court must discern whether the *scope* of the claims are identical, not merely whether different words are used.  *Id. (citing Slimfold Mfg. Co. v. Kinkead Indus.*, 810 F.2d 1113, 1115 (Fed.Cir.1987)). Further, an amendment made merely for clarification does not extinguish prior infringement claims.  *Kaufman Co., Inc. v. Lantech, Inc.*, 807 F.2d 970, 976-77 (Fed.Cir.1986).  The inquiry takes into account the patent itself, including claims, specification and prosecution history. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir. 1996); *Laitram Corp.*, 163 F.3d at 1346.  Thus, notwithstanding the fact that changes to the original claim 1 of the '086 Patent were made during reexamination, the pivotal question is whether these changes effected a substantive change in the claim.

The amended language in claim 1 which finally overcame the Patent Examiner's rejection of the '086 Patent on reexamination calls for a (1) *closed bag-like covering* which contains a filling (2) *directly contacting* and (3) *partially filling* the bag-like covering.   Plaintiffs are correct that a claim amendment made during reexamination following a prior art rejection is not per se a substantive change.  *Laitram*, 163 F.3d at 1347; *but see Scripps Clinic & Research Found. v. Genentech, Inc.*, 678 F.Supp.1429, 1433 (N.D.Cal. 1988) ("[w]here the amendment is made to overcome the Examiner's rejection of claims as unpatentable, it is a substantive change).  Rather, whether an amendment to overcome a rejection will be treated as a substantial change depends on the circumstances.  *Slimfold*, 810 F.2d at 1116.  At the same time, the fact that an amendment resulted in allowance of claims that had been rejected in the reexamination proceeding over prior

art is a "highly influential piece of prosecution history" which the Court may consider. *Laitram* at 1348.

As part of the prosecution history, the Examiner's two rejections of the claim prior to Plaintiffs' amendment could be viewed as persuasive and independent confirmation that the scope of reexamined claim was changed from its original shape. The Examiner last rejected claim 1 "under 35 U.S.C. § 103(a) as being unpatentable over Hathaway in view of Gaudreault et al." *Defts' Ex. 7 at 2*. After the amendment was made the Examiner noted that

> [a]s a result of the applicant's amendment . . . the claim now states that the bag like covering comprises a closed bag-like covering, in which the filler directly contacts and partially fills the bag-like covering. This defines over the Hathaway patent . . . ." *Defts' Ex. 10 at 2*.

The subject matter in this case is a flexible pillow. A comparative analysis of claim 1 of the original and the reexamined '086 Patent requires little more than applying the ordinary and plain meaning of words to claim language and written description. *See Quantum Corp. v. Rodime PLC*, 851 F.Supp. 1382, 1385 (D.Minn. 1994), *aff'd*, 65 F.3d 1577 (Fed.Cir. 1995).

*"Closed bag-like covering"*

Referring to the amended language, Plaintiffs content that "closed" in the phrase "closed bag-like covering" clarifies the language "containing" in the original claim because it expresses what is meant by the phrase "any material capable of . . . containment of filling" in the written description. *Pltffs' Ex. 2, Col. 4, Ln.1*. They insist that because the pillow was designed to be placed on various body parts, it could not function if it was open at one end. However, as Defendants points out, under a broad reading, the original language in the original claim 1 left itself open to alternate designs, one of which includes a pillow with a tubular bag-like covering

7

with an opening on one side to accommodate an insert which can be understood as a kind of "filling" (as opposed to a construction of the original claim "requiring" an insert as urged by Plaintiffs, *see Resp. at 11*).  This reading of the original claim 1 was the basis for the Patent Examiner's rejection of the '086 Patent on reexamination.  *See Defts' Ex. 7 at 4-5; see Solomon v. Kimberly-Clark*, 216 F.3d 1372, 1377 (Fed.Cir. 2000).   Plaintiffs amended the language of the original claim to necessarily specify a closed bag-like covering so that it did not cover one of the design elements presented in the Hathaway or Gaudreault patents.  *Defts' Ex. 8 at 2-3* ("the 'material' [in the Hathaway pillow] is not in direct contact with the bag-like covering, as is presently claimed"; "the formed [Hathaway] pocket remains open with or without an insert.  This present invention, as now claimed, is closed").

     Nor does the language in the written description or specification define "containing" in the original claim such that the word would be understood to be limited to a "closed" bag-like covering (with the amending language then merely clarifying the original claim).   According to the specification,

> the inner cover of the pillow is comprised of suitable natural fibers preferably cotton, or other natural fiber materials.  Alternatively, inner cover . . . can comprise any material capable of efficiently transferring heat and containment of filling.

*Pltffs' Ex. 2, Col. 4, Ln. 1*.   Even if this language could be taken as describing only a closed bag-like covering (which I find that it does not in the plain, ordinary meaning of those words), its presence in the written description does not render it implicit in the original claims.  *See Laitram, 163 F.3d at 1346* (the "mere repetition in the written description of a preferred aspect of a claimed invention does not limit the scope of an invention that is described in the claims in

8

different and broader terms"). While the written description may be used to define a term already in a claim limitation, *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182. 1186 *(Fed.Cir. 1998),* in this case Plaintiffs' use of the written description goes beyond this line and reads limitations into the claim, which is not permissible. *See Comark*, 156 F.3d at 1186; *cmp. Kaufman* at 976-77 (where amended language was already present in the specification language)[5]; *Laitram, 163 F.3d at 1346* (a court may not import limitations from the written description into the claims) (citation omitted).

### *"Directly contacting and partially filling"*

Plaintiffs also argue that the amended language inserted in the second portion of the claim language – "said filling directly contacting and partially filling said bag like covering" clarifies the meaning of "containing a filling" in the original claim language. In Plaintiffs' view, the amending language clarifies the characteristics of the pillow which allow it to be flexible and conform to various body parts. Plaintiffs contend that the pillow would have to be partially filled since it can be shaped to conform only if partially filled (complete filling would make it rigid).

According to the written description, the Thera-Pillow "can be shaped to conform to any given anatomical area, be it arms, legs, neck, spine and the like." *Pltffs' Ex. 2, Col 4, Ln. 17-19*. The description also states that the "[i]nner bag-like cover is partially filled with filling." *Pltffs' Ex. 2, Col. 4, Ln. 2-3*. However, it is the language in the claim, not the written description,

---

[5] Plaintiffs place too much reliance on *Kaufman Co., Inc. v. Lantech, Inc.*, 807 F.2d 970, 977 (Fed.Cir. 1986), because it does not support their position. In *Kaufman*, the amendment to the claim were considered to be "redundant" by the court because the amended language was *already* present in the specification language. *Kaufman* at 976-77. Moreover, the amendments in *Kaufman* were unnecessary in that the claims were found to be patentable upon reexamination, and were *not* added to overcome rejection of the claim by the Patent Office. *Kaufman* at 972 -- unlike the amendment that the VanWinkles made to the '086 Patent.

which define the scope of the patent right.  *Laitram Corp*., 163 F.3d at 1347.  Here, a plain, ordinary reading of the words "containing a filling" in the original claim 1 does not necessarily translate into "partially filling."  Thus, the latter language reflects a limitation which appears in the specification but which cannot be read into the claim without narrowing its scope.  *See Laitram*, 163 F.3d at 1347 (citation omitted) ("what is **meant** by a word **in** *a claim "is not to be confused with adding an extraneous limitation appearing in the specification, which is improper") (emphasis supplied)*.

Similarly, Plaintiffs maintain that specifying that the pillow comprised a "closed" bag-like covering was not a substantive change because if it were envisioned otherwise, the Thera-Pillow would never have received the initial patent.  They base this contention on the Swearingen pillow, which was a prior design, which called for a zippered compartment allowing insert of freezable medium and which had been before the Examiner at the time the Patent Office first issued the '086 Patent to the Van Winkles.  *Pltffs' Ex. 3, Col. 2, Lns 49-52; 63-63; Col. 4, Lns. 10-21*.

Pointing to the insert capability of the Swearingen design proves to be a false lead.  The prosecution history reveals that the Examiner had indeed considered the Swearingen patent in the original file history of the '086 Patent, but its design was cited as a "therapeutic pillow can have a tubular shape such that the pillow can be bent into varying attitudes, such as about a users neck." *Defts' Ex. 14 at 2.*[6]  On reexamination, the '086 Patent was rejected in view of different elements of both the Hathaway and Gaudreault patents, not simply on the basis of an insert design, as one

---

[6] The Swearingen device was also cited by Plaintiffs as a "tubular shape that could be bent" in the Patent Owners' statement challenging Defendant Cappelli's request for reexamination.  *Defts Ex. 3 at 4 & 8*.  Plaintiffs had argued that the Hathaway patent was cumulative of old art, based on the Swearingen design and other prior art  (a contention the Patent Examiner did not share).

10

must accept in order to follow Plaintiffs' line of reasoning.  *See Defts' Ex. 7 at 2* ("Claim 1 is rejected under 35 U.S.C. 103(a) as being unpatentable over Hathaway in view of Gaudreault et al."); Ex. 4 at 3 ("Hathaway is not merely cumulative; in combination with Gaudreault et al., it is invalidating").

The Examiner described the Hathaway design as a "therapeutic device that includes a heated pad placed within a cover element that includes a pair of handles or ears, one of each handle being at each end of the cover. *Defts' Ex. 2 at 3*.  It was touted as a kind of evolutionary design incorporating various facets of less sophisticated prior art and viewed by the Examiner as a "single reference that has all three elements required by the introductory portion of the [VanWinkles'] claim" and which included "all of the elements of Jensen, Poux and Swearingen, and much more." *Defts' Ex. 4 at 3*, Examiner's Reply to Patent Owners' Statement (emphasis supplied) ("[m]ore to the point, Hathaway is much better art than any of Jensen, Poux and/or Swearingen, taken either singularly or in combination").

In addition, the Examiner found that Hathaway would have motivated one of ordinary skill to substitute different "natural" filler materials, such as the Gaudreault device which used barley or rice. *Defts' Ex. 4 at 3*.  The Examiner found the Gaudreault design instructive as to the substitution of cereal grain filler instead of the gel filler used in the Hathaway patent. *Defts' Ex. 5 at 3* ("Gaudreault teaches the use of the claimed thermal filler in a device that is the equivalent to the one claimed, and in addition the filler taught by Gaudreault et al is an equivalent of the gel filler used by Hathaway").

Thus, on reexamination, Plaintiffs were faced with prior art devices (Hathaway and Gaudreault) uncovered by Defendant Cappelli and which the Patent Examiner determined

incorporated all of the essential elements presented in the Thera-Pillow.   After two rejections (the last one being final), the VanWinkles had to make changes which would overcome another rejection.   Adding language which specified that the contents "partially fill" and "directly contact" the bag-like cover (and, with the addition of that language, stating that the cover be closed-ended) changed one of several parameters already embraced by the Hathaway design.   By virtue of the amending language, the Thera-Pillow now lacked the openings at either end of the pillow which were features of the Hathaway device.  *Pltffs' Ex. 9 at 2; Ex. 10 at 2* (noting that closed cover would "destroy the functionality of the Hathaway patent, since it is clear that Hathaway" was made for an insert in the pocket).   However, in successfully overcoming the Patent Examiner's rejection with the amendments, Plaintiffs also narrowed the scope of claim 1.

## CONCLUSION

In sum, Plaintiffs' construction of claim 1 of the '086 Patent requires reading limitations into the claim from the written description, which is impermissible.   *Laitram*, 163 F.3d at 1346. By adding these limitations during reexamination, Plaintiffs narrowed the scope of claim 1, thereby substantively changing its scope.   Because the claim in the reissued '086 Patent is not identical to the original claim, as a matter of law, Plaintiffs are not entitled to infringement damages prior to the issuance of the Reexamination Certificate, i.e., prior to November 28, 2000.

**WHEREFORE**,

**IT IS HEREBY ORDERED** that in the Motion for Summary Judgment on Computation of Damages filed by Defendant Ichauway Mills, Inc. and joined by Defendant Tim Cappelli and Cappelli Industries, Ltd. (**Doc. 161**), summary judgment is GRANTED to Defendants in that Plaintiffs can recover for infringement, if proven, of their reexamined United States Patent No.

5,584,086 only from the date of the issuance of the reexamination certificate for that patent, which is November 28, 2000.

                                                                                             _____
                                                                                UNITED STATES MAGISTRATE JUDGE