IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LARRY K. VANWINKLE and
TRESA A. VANWINKLE,

      Plaintiffs,

vs.                                                                                                       Civ.No. 98-0052 WWD/DJS ACE

TIM CAPPELLI and SHERRY CAPPELLI,
COLBYCO INDUSTRIES, L.L.C., a Texas
limited liability company, ATLANTIS
ENTERPRISES, INC., a Texas corporation and
ICHAUWAY MILLS, INC., a Texas corporation,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon a Motion to Exclude Testimony of Plaintiffs' Expert Rod D. Baker, filed by Defendant Ichauway Mills, Inc. ("Ichauway Mills") on June 1, 2001 **(Doc. 195)**.   This is a patent infringement lawsuit involving a flexible therapeutic pillow.  Defendants Tim Cappelli and Cappelli Industries, Ltd. ("Cappelli Defendants") have filed a partial joinder to the instant motion.

Ichauway Mills contends that the testimony of Mr. Baker, an Albuquerque patent attorney, is unnecessary and irrelevant in light of stipulations made regarding both the '278 and '086 Patents.  Defendant Ichauway represents that the sole challenge that remains on the part of Ichauway Mills is an infringement question, viz., the percentage of water content of the "natural materials" used as filling.   As to this remaining question, however, Defendant seeks to exclude Mr. Baker's expert testimony on the basis that Mr. Baker has no expertise in this area and has conducted no testing on the accused product in order to determine water content.

Plaintiffs ("Van Winkles") acknowledge that issues of infringement and validity as to the '278 Patent have been settled between Plaintiffs and Ichauway Mills (*see Doc. 223, Stip. Order and Injunction, July 16, 2001, also attached as Deft's Ex. 1*), and that the validity of the '086 Patent is not disputed by Ichauway Mills (*see Doc. 186, Stipulated Order, May 15, 2001, also attached as Deft's Ex. 2*).  They also acknowledge that Ichauway Mills has stipulated that its accused products meet all of the elements or limitations of the amended claim of the '086 Patent, except for the water content limitation, leaving that as the sole infringement question.  *See Mem. at 4*.  However, Plaintiffs point out that the Cappelli Defendants have not conceded as much. They therefore argue that precluding Mr. Baker's testimony would be unfairly prejudicial to Plaintiffs in that the Cappelli Defendants would still be allowed to raise issues regarding validity and infringement, leaving Plaintiffs unable to present their case on these issues.

In their joinder (and without any discussion), the Cappelli Defendants take exception to Ichauway Mills' position that Mr. Baker's expert opinion as to infringement of the '278 Patent is irrelevant, and that expert testimony on the '086 Patent is "largely" irrelevant.  Notwithstanding their noted exceptions, although the Cappelli Defendants were not parties to the Stipulated Order which settled the validity claims of the '086 Patent, they were clearly parties to the Stipulated Order and Injunction which resolved the validity and infringement issues on the '278 Patent.  *See Doc. 223, ¶ 2*.[1]  Thus, expert testimony on either the validity or infringement of the '278 Patent is

---

[1] The paragraph reads:  "As between plaintiffs and Timothy W. Cappelli ("Cappelli") all counts, claims, affirmative defenses, counterclaims and prayers for relief related to the *validity*, enforceability and *infringement* of the '278 Patent are dismissed with prejudice. . . [except for claims of mismarking and fraudulent conveyance]" (emphasis added).  Cappelli Industries, Ltd. has unsuccessfully alleged lack of personal jurisdiction in this case.  *See* Doc. 229.

indeed irrelevant and unnecessary.[2]  As to the '086 Patent, the Cappelli Defendants have not joined with Ichauway Mills or made further stipulations on their own regarding the elements or limitations of the '086 Patent within the accused products.  I thus find no basis for excluding expert testimony in this area.

Nor do I find any reason to exclude Mr. Baker's testimony on the moisture content of the accused products on the basis presented by Defendants.   Plaintiffs cannot dispute that in a patent infringement claim, they must prove that all elements of their patent claim, including the moisture content of the filling limitation, were found in the accused products, despite the fact that in a previous motion to add an additional expert, they unsuccessfully attempted to convince the Court that the water content of the filling had not been a contested issue in this litigation.  *See Court's Order, Doc. 225* [3]  The written description of the '086 Patent indicates that it is:

> filled with natural granular material having a water content in the range of 5% to 25% by weight.  The preferred range of water content is from 9% to 16%.

*See Mem., Ex. 5*.  In his fourteen-page report to Plaintiffs' counsel, Mr. Baker examined the accused products and determined that they contained "de-hulled, white rice, probably medium grain."  *Ex. 4*.  He also found that the filling in the Van Winkle products contained "processed

---

[2] I note that in the Joint Motion for Stay (Doc. 150) which predated the reexamination of the '086 Patent, all Defendants agreed that they would abandon validity counterclaims for the '086 Patent, conditional on the claim surviving reexamination intact.  However, the sole claim in the patent was narrowed during reexamination in order to overcome rejection of the original claim (Doc. 227), in which case the parties would re-open infringement issues for the '086 Patent with the newly defined claims.  (Doc. 150, ¶ 3).  Only Ichauway Mills has stipulated to the validity of the '086 Patent.

[3] *See Pennwalt Corp. v. Durand Wylund Inc.*, 833 F.2d 931, 949 (Fed.Cir. 1987), *cert denied,* 485 U.S. 961 (1988).  Thus, the Van Winkles must prove that rice grains used in the Defendants' accused product contain the same percentage of water as the infringed product.

barley." *Ex. 4 at 5*. Mr. Baker opined that, "without regard for whether the rice filling in [the accused product] is medium or long grain, it has a water content between 5% and 25% and therefore meets the limitation in the claim [of the '086 Patent]." *Ex. 4 at 7*. He explained that the basis for his opinion on the water content of rice was a United States Department of Agriculture publication he found at the Zimmerman Library at the University of New Mexico, entitled *Composition of Foods: Cereal Grains and Pasta*. *Id*.

Although Mr. Baker did not perform independent research or testing of the moisture content of the rice filling in the accused products in order to arrive at his conclusion, the critical question here is whether that omission affects the reliability of his testimony and whether his testimony would assist the trier of fact to understand the evidence. Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 587-88 (1993), when faced with a proffer of expert scientific testimony, a district court "must determine at the outset, pursuant to [Fed.R.Evid.]104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Id.* 509 U.S. at 592. Under *Kumho Tire Co. v. Carmichael*, 119 S.Ct. 1167 (1999), the Supreme Court held that this gatekeeper function of the district court applies to all expert testimony, not just testimony based in science.

The *Daubert* factors are neither exclusive nor dispositive.[4]  Depending on the specifics of

---

[4] These factors are: (1) whether the theory or technique can be and has been tested;  (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or technique has been generally accepted within the scientific community. *Daubert*, 509 U.S. at 592-93. *Kumho Tires* recognizes that these factors might also be applicable in assessing the reliability of non-scientific expert testimony, depending upon "the particular circumstances of the particular case at issue." 119 S.Ct. at 1175.

4

the case and the type of expert testimony, other factors may become more relevant or helpful. *Kumho*, 119 S.Ct. at 1176 (concluding that trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable). In order to be found infringing on the '086 Patent, the Van Winkles must show that the moisture of the rice found in the filling of the accused products must be the same as in the limitations of the '086 Patent.  I find that Mr. Baker's reference to a treatise or government publication as a basis for determining the moisture content of white rice instead of conducting independent moisture content tests on the white rice he found inside the accused products is a justifiable extrapolation from an accepted premise.  *Cmp*., *Gen'l Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (noting that in some cases a trial court "may conclude that there is simply too great an analytical gap between the data and the opinion proffered").

Defendants offer no sound basis for excluding Mr. Baker as an unqualified expert because he has no scientific expertise.  Fed.R.Evid. 702 allows that experience alone – or in conjunction with other knowledge, skill, training or education – may provide a sufficient foundation for expert testimony.  Under 702, an expert may be qualified on basis of experience alone.  Because Defendants do not raise a challenge Mr. Baker's expertise as a patent attorney, I assume none for the purposes of disqualifying him as an expert witness for this case.  Defendants may subject any perceived shortcomings in Mr. Baker's testimony to the usual rigors of cross-examination. *Daubert*, 509 U.S. at 595 ("[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence").

Accordingly, Mr. Baker's testimony will not be excluded except for testimony regarding

5

the '278 Patent, as I find that he is qualified to testify as an expert, and also find his testimony to be reliable and of assistance in understanding the evidence in this case. *Compton v. Subaru of America, Inc.*, 82 F.3d 1513, 1518-19 (10th Cir.), *cert. denied*, 117 S.Ct. 611 (1996) (as long as an expert "stays within the reasonable confines of his subject area, our case law establishes a lack of specialization does not affect the admissibility of [the expert] opinion, but only its weight").

**WHEREFORE,**

**IT IS ORDERED** that the Motion to Exclude Testimony of Plaintiffs' Expert Rod D. Baker, filed by Defendant Ichauway Mills, Inc. and joined by Defendants Tim Cappelli and Cappelli Industries, Ltd. **(Doc. 195)** is hereby GRANTED IN PART and DENIED IN PART in that Mr. Baker's testimony regarding the '278 Patent will be excluded at trial, and testimony regarding the '086 Patent will be allowed, including testimony on the moisture content of the natural filling in any of the accused products Mr. Baker examined.

_____
UNITED STATES MAGISTRATE JUDGE