IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LARRY K. VANWINKLE and
TRESA A. VANWINKLE,

      Plaintiffs,

vs.                                                        Civ.No. 98-0052 WWD/DJS ACE

TIM CAPPELLI and SHERRY CAPPELLI,
COLBYCO INDUSTRIES, L.L.C., a Texas
limited liability company, ATLANTIS
ENTERPRISES, INC., a Texas corporation and
ICHAUWAY MILLS, INC., a Texas corporation,

      Defendants.

## MEMORANDUM OPINION AND ORDER

      THIS MATTER comes before the Court upon a Motion to Exclude Testimony of Plaintiffs' Expert Allen M. Parkman, filed on June 5, 2001 by Defendant Ichauway Mills, Inc. ("Ichauway Mills") **(Doc. 198)**, and upon a Motion to Strike June 19, 2001 Opinion and All Testimony of Plaintiffs' Expert Allen M. Parkman, filed on June 21, 2001 by Defendant Ichauway Mills **(Doc. 211)**. Defendants Tim Cappelli and Cappelli Industries, Ltd., have filed a joinder to the earlier motion.

      This case involves the infringement of a patent for a therapeutic pillow owned by the Plaintiffs ("Van Winkles"). On April 20, 1999, upon joint request of the parties, a stay was entered pending reexamination of the one of the patents at issue in this case (Doc. 151), and was lifted on January 26, 2001 (Doc. 157). In the first motion (Doc. 198), Defendants contend that the September 14, 1998 damages analysis report by Dr. Parkman, Plaintiff's damages expert, is based on outdated patent law in that his calculations are based on the infringer's profits instead of

loss of reasonable royalties, and that his report fails to define the relevant market for purposes of his damages analysis.  See Ex. 5 (Parkman report dated Sept. 14, 1998).   Dr. Parkman's September 14, 1998 report assumed the premise that the Van Winkles had a 100% market share in all channels of distribution, a shortcoming noticed by the Defendants' damages expert, Sam Rhodes.  Ex. 4 at 4.  Ichauway Mills historically sold products to mass market retailers such as K-Mart and Wal-Mart, as did the Cappelli Defendants (under the name of Colbyco Industries, LLC.).  The Cappelli Defendants had an exclusive license to mass markets such as K-Mart and Wal-Mart, but could not sell the pillows in health food stores, medical suppliers and health care providers   *See Ex. 2 at 3*.

In the first motion (Doc. 198),  Defendants seek to exclude the testimony in the September 14, 1998 report from trial of this case because it is not reliable under Fed.R.Evid.Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 587-88 (1993).    I need not address this motion on its merits. In their June 19, 2001 response to the motion, Plaintiffs attached a subsequent report of Dr. Parkman, *also* dated June 19, 2001 which  recognized the market divisions between the parties and based damages on the loss of royalties experienced by the Van Winkles.[1]   These changes in the report would seem to meet the specific challenges posed by Defendants to Dr. Parkman's first report and, as Plaintiffs suggest, render Defendants' first motion (Doc. 198) moot.   Even so, the submission of Dr. Parkman's second report has merely

---

[1] In this later report, Dr. Parkman stated that his "understanding at that time [of the first report] was that except for the infringement of their patent that the Van Winkles were going to produce and distribute their product." *Resp., Ex. A at 1-2*.  However, in both reports, Dr. Parkman opined that there was a question of the Van Winkles' ability to mass  produce and market their product.   Damages in the first report were calculated at $1,527,465; in the second, a range from $464,241 to $678,282.

2

turned up the level of Defendants' indignation and provided a new battleground for their opposition to Plaintiffs' damages expert. In the second motion (Doc. 211), and in reply to the first motion, Defendants argue that Dr. Parkman's June 19, 2001 report should be stricken. Their position is that because the report contains an entirely new analysis, it should not be considered a supplementary or updated expert report but rather a replacement report which effectively designates a new expert after the deadline date for filing expert reports has expired. After considering the parties' briefs, replete with factual embellishments and endless finger-pointing, I conclude that both parties have proceeded down a course of litigation to where this motion was almost inevitable. I also conclude that Defendants' second motion will be denied.[2]

Dr. Parkman filed his first report on September 14, 1998, two days before the deadline for filing expert reports. *Resp., Ex. A; see also* Doc. 73. Defendants maintain that Plaintiffs were on notice about the deficiencies in Parkman's analysis from the time their own damages expert, CPA Sam Rhodes, filed his report on October 16, 1998. Rhodes pointed out that Parkman's analysis omitted the applicability of a reasonable royalty to assess damages and instead incorrectly proposed a "de facto claim for Ichauway to disgorge all profits realized" during the relevant period, contrary to updated patent law. *Ex. 1 at 2*.[3] According to Defendants, a written request on April 16, 2001 to Plaintiffs for supplemental sales information and an updated damages expert report and telephone requests on April 23, May 1 and May 31, 2001 were all unsuccessful. *See*

---

[2] References to exhibits are those attached to the later motion (Doc. 211) unless otherwise noted.

[3] After 1946, patent law eliminated a patentee's right to a wholesale recovery of the infringer's profits, although a patentee would be entitled to his own lost profits if he could prove them. *King Instruments Corp. v. Perego*, 65 F.3d 941, 947-48 (Fed.Cir. 1995), *cited in Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341 (Fed.Cir. 1999).

*Mem., Ex. 2*.   Instead, Plaintiffs waited until June 19, 2001 before providing Defendants with Dr. Parkman's second report -- and did so by attaching it as an exhibit to the response to Defendants' first motion to exclude Dr. Parkman's testimony via his first report.  *See also Resp., Ex. B*.

The major change in Dr. Parkman's June 19th report, or at least the change Defendants have chosen to focus on as grounds for the present motion, is the switch in damage theory to one in which damages are calculated on a lost royalty approach instead of infringer's profits. Defendants' entire argument of untimeliness and prejudice crumbles unless one accepts the premise that this switch results in a report so new and different that it is tantamount to naming a new expert.   I reject this premise because it is a creation of intellectual gymnastics and has no relation to the clear facts in this case.   Defendants are essentially attacking Parkman's second report for using a methodology which they previously argued (in their first motion) *should have been* in Parkman's first report.   Unable to challenge the June 19, 2001 report on grounds of methodology and reliability, they attempt to create a "straw expert" of sorts -- designation of an expert after deadlines have passed -- which they can then attack on grounds of untimeliness and prejudice.   I find no merit to either ground.

Plaintiffs do not dispute that the lost royalty approach relied on by Parkman in the later report is a different methodology.   However, its use hardly prejudices Defendants where their own expert, Sam Rhodes, relied on the methodology back in October 1998, and where its omission was the basis for Defendants' challenge to Parkman's first report.   Therefore, Judge Svet's decision not to allow additional expert depositions at the March 8, 2001 telephonic hearing, *see* Doc. 170, has no bearing on Defendants' failure to depose Dr. Parkman.  Another reason Defendants cannot profess surprise at Parkman's use of the lost royalty method is that

4

either method of damage calculation – lost royalty or lost profits – is viable under patent law.[4]  I also recognize that there is some room for skepticism regarding Plaintiffs' actual need for Defendants' June 2001 updates on sales information before Parkman could finalize his second report.[5]  Nevertheless, his first report was characterized as a "preliminary investigation of the damages incurred by the Van Winkles. . . ." *Resp., Ex. A at 1*.

Because the June 19, 2001 report is a supplemental report, it is timely under the Federal Rules of Civil Procedure.  *See Fed.R.Civ.P. 26(a)(2)(C)*.  No date has been set for trial, nor do discovery deadlines necessarily dictate a trial date, as Defendants imply.  *See Reply at 4*.  Defendants also seem to generally object to a plaintiff's ability to supplement under these rules as a means of circumventing an adverse party's ability to conduct timely discovery.  *See Reply at 4*.  However, under R. 26(a)(3)(C), a defendant has the means to object within a certain time period after a plaintiff's supplementation, and parties have recourse to the Court when they feel the rules are being abused.  In this case, both parties share in backing discovery deadlines up against a wall.  Defendants complain about receiving no response to requests for supplementation of expert reports in late April and May 2001, yet their April 16th letter, in which they agreed to a 30-day supplementation period, was sent more than four months after the stay in this case was lifted – even though Defendants had been specifically aware of their objections to Parkman's first report since October 1998.  Plaintiffs' expert report may come too late to suit Defendants, but it is

---

[4]  "Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284.  *See also* n.3, *supra*.

[5]  As examples, information about the parties' relevant markets were disclosed early on in the case, and the update of June 5, 2001 contained only typographical corrections.  *Reply, Ex. 3*.

technically within the time constraints of the deadlines set in this case, and despite its characterization as a "new" report, does not prejudice Defendants in their ability to defend their case.

**WHEREFORE**,

**IT IS ORDERED** that the Motion to Exclude Testimony of Plaintiffs' Expert Allen M. Parkman, filed by Defendant Ichauway Mills, Inc. **(Doc. 198)** is hereby DENIED AS MOOT;

**IT IS FURTHER ORDERED** that the Motion to Strike June 19, 2001 Opinion and All Testimony of Plaintiffs' Expert Allen M. Parkman, filed by Defendant Ichauway Mills **(Doc. 211)** is hereby DENIED.

_____
UNITED STATES MAGISTRATE JUDGE